# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| TERRY L. CHARLTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 1:04-1290 |
| | ) | |
| TENNESSEE DEPARTMENT OF, | ) | |
| CORRECTIONS, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

### ORDER GRANTING DEFENDANTS' PENDING MOTION TO DISMISS

---

Dr. Fred Cole and Corrections Corporation of America ("Defendants"), the remaining defendants in this *pro se* civil rights action, collectively move to dismiss Plaintiff's § 1983 claims alleging deliberate indifference to serious medical needs in violation of the Eight Amendment to the United States Constitution. In support, Defendants submit that the allegations contained in the verified complaint, even if true, do not show the level of mental culpability necessary to support a finding of deliberate indifference under the Eighth Amendment. Having reviewed the complaint in a light most favorable to Plaintiff, the court agrees with Defendants, GRANTS their collective Second Motion to Dismiss [Dkt. # 40], and DISMISSES Plaintiff's § 1983 claims.

The verified complaint discloses that Plaintiff Terry L. Charlton is an inmate at the

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on 12 9 05

Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee.[1]  Prior to his October 2003 transfer to WCF, Plaintiff was housed at a different state penal institution in Nashville. Also before the transfer, in August 2003, Plaintiff underwent surgery on his left hand for an unspecified reason.  The operating physician, a Dr. Weaver, prescribed pain medication and penicillin following Plaintiff's left hand surgery.

When Plaintiff arrived at WCF, Dr. Cole substituted less-expensive medications for the prescriptions written by Dr. Weaver.  The comparative costs of the prescriptions were the only factors that entered into Dr. Cole's decision to change Plaintiff's medications upon his arrival at WCF.  The complaint does not allege that Dr. Cole knew the less-expensive medications were ineffective or posed any special risk of harm.  Dr. Cole did not first consult with Dr. Weaver before substituting the different medications.

Plaintiff's left-hand problems continued and actually worsened following the surgery, and, on October 24, 2003 and April 23, 2004, Plaintiff was transported from WCF to the emergency room at Jackson-Madison County General Hospital ("JMCGH") in Jackson, Tennessee.  Over the course of these two trips to JMCGH, three different prescriptions were ordered by the emergency room doctors.  Back at WCF, however, Dr. Cole again substituted less-costly versions of the recommended medications.

According to Plaintiff, his left hand is now virtually useless as a direct result of Dr. Cole's cost-benefit substitution.  He claims that Dr. Cole's economic considerations gave

---

[1]The facts are described in Plaintiff's favor for the purposes of this order only.

2

insufficient weight to Plaintiff's pain and suffering and failed to foresee and to prevent the ultimate deterioration of Plaintiff's sense of feeling in and ability to use his left hand. He further claims that Dr. Cole's decisions amounted to "cruel and unusual punishment" within the meaning of the Eighth Amendment to the United States Constitution. For Defendant CCA's part, Plaintiff claims that CCA is "legally responsible for" ensuring that Plaintiff receives constitutionally adequate medical care while incarcerated. Plaintiff seeks a declaratory judgment, compensatory damages, and punitive damages.

Defendants' collective motion to dismiss is governed by Rule 12 of the Federal Rules of Civil Procedure, which provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." A complaint should not be dismissed for failure to state a claim unless it is clear that the plaintiff would not be entitled to relief even if the factual allegations were proven. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The factual allegations must be taken as true, *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989), and it must be apparent that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. 41, 45-46 (1957); *Hammond*, 866 F.2d at 175. In short, the complaint must be read in the light most favorable to the plaintiff. *Allard v. Weitzman (In re Delorian Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

The Eighth Amendment to the United States Constitution proscribes, among other things, the imposition by the government of "cruel and unusual punishment." U.S. CONST. amend. VIII. The power of state government actors is equally restrained by the Cruel and

3

Unusual Punishment Clause by virtue of the Due Process Clause of the Fourteenth Amendment. *See* U.S. CONST. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."); *Robinson v. California*, 370 U.S. 660, 666 (1962); *Louisiana ex. rel. Francis v. Resweber*, 359 U.S. 459, 463 (1947). In the prison context, prison doctors are within the class of "state actors" whose conduct or omissions may lead to constitutional liability. *West v. Atkins*, 487 U.S. 42, 53–54 (1988).

Initially, the primary function of the Eighth Amendment was to protect against particularly tortuous and barbaric means of inflicting punishment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). As our Nation has matured, however, our understanding of what constitutes "cruelty" and of what punishment is "unusual" has evolved into a much broader concept, including, not only torture and similar atrocities, but also penal measures that do not comport with basic notions of "dignity, civilized standards, humanity, and decency." *Id.* (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)); *Williams v. Mehra*, 135 F.3d 1105, 1112 (6th Cir. 1998). Punishment that violates these contemporary standards, or that involves the "unnecessary and wanton infliction of pain," is deemed repugnant to the Cruel and Unusual Punishment Clause as that clause is presently understood even if the punishment in question might not amount to "torture" per se. *Estelle*, 429 U.S. at 102–03 (quoting *Gregg v. Georgia*, 428 U.S. 153, 172–73 (1976) and citing *Tropp v. Dulles*, 356 U.S. 86, 101 (1958)); *Resweber*, 329 U.S. at 463; *Weems v. United States*, 217 U.S. 349, 378 (1910); *Wilkerson v. Utah*, 99 U.S. 130, 136 (1879)).

4

For example, the government may not, consistent with the Eighth Amendment, intentionally ignore the serious medical needs and conditions of its prisoners merely because they are prisoners. Although in some extreme situations governmental indifference to a prisoner's health may literally amount to the kind of barbarism that concerned the Founders, *see id.* (citing *In Re Kemler*, 136 U.S. 436, 447 (1870)), in the more common cases it involves "less serious pain and suffering which no one suggests would serve any [legitimate] penological purpose." *Id.* at 103 (internal citations omitted); *see also Owensby v. City of Cincinnati*, No. 1:01-CV-00769, 2004 U.S.Dist. LEXIS 9444, at *83 (S.D. Ohio May 19, 2004) (quoting *Estelle*)). Thus, it is now well-settled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed" by the Cruel and Unusual Punishment Clause as a matter of law. *Estelle*, 429 U.S. at 104 (citing *Gregg*, 428 U.S. at 173)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *Estelle*)).

Still, an incarcerated person may not claim the protection of the Eighth Amendment simply because he disagrees with or is injured by the medical treatment, or perhaps the lack thereof, that he receives in prison. Unforseeable, accidental injury or pain does not contravene the Cruel and Unusual Punishment Clause even if caused by governmental action or inaction. *Resweber*, 329 U.S. at 464. Moreover, medical malpractice, however harmful, "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *Terrance*, 286 F.3d at 843 (quoting *Estelle*)). " 'Where a prisoner

has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Simpson v. Ameji*, No. 02-5878, 2003 U.S.App. LEXIS 2039, at *4 (6th Cir. Jan. 30, 2003) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

In these cases the critical question is whether the prison physician possessed the degree of mental culpability necessary to label his treatment of the prisoner an "unnecessary and wanton infliction of pain." *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 544 (6th Cir. 2003) (citing *Farmer*). The prisoner must refer to objective facts that were known to the physician at the time of the challenged action that would have put the physician on notice of the presence of a serious risk of harm. *Farmer*, 511 U.S. at 837. In addition, the plaintiff must allege that the physician was, subjectively speaking, "deliberately indifferent" to the known risk. *Id.*; *Helling v. McKinney*, 509 U.S. 25, 32 (1993). Deliberate indifference occurs only when a physician "knows of and [consciously or recklessly] disregards" a threat of serious harm posed by a given course of action or inaction. *Farmer*, 511 U.S. at 835.[2]

Here, Plaintiff's verified complaint does not state a violation of the Eighth Amendment by Dr. Cole. At most, the complaint alleges that Dr. Cole chose between two

---

[2]The Court in *Farmer* also suggested that the requisite level of knowledge required *may* decrease in inverse proportion to the obviousness of the risk. *Farmer*, 511 U.S. at 840.

given types or brands of prescription medication based on nothing other than their relative costs. The complaint does not allege objective facts existing at the time of Dr. Cole's decision that would have put him on notice, at the time, that the less-expensive medications posed a threat of serious harm to Plaintiff's left hand. Unless Dr. Cole was aware of facts that would have made the risk of substitution obvious at the time he substituted the less-expensive medications, he cannot be held liable for deliberate indifference.

As for Defendant CCA, the complaint merely alleges that CCA is the "legally responsible" entity for ensuring that Plaintiff receives constitutionally adequate care. Because the court has already determined that the complaint fails to allege any constitutionally *in*adequate care, however, the claims against Defendant CCA clearly have no merit and must also be dismissed.

For the foregoing reasons, Defendants' collective Second Motion to Dismiss [Dkt. # 40] is GRANTED, and Plaintiff's § 1983 claims against Dr. Cole and CCA are DISMISSED. Because there are no remaining claims in this case, the clerk is directed to enter final judgment in accordance with this order.

IT IS SO ORDERED.


_James D. Todd_
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_5 December 2005_
DATE

7

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 56 in case 1:04-CV-01290 was distributed by fax, mail, or direct printing on December 9, 2005 to the parties listed.

---

Jon A. York
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

James I. Pentecost
PENTECOST GLENN & RUDD, PLLC
106 Stonebridge Blvd.
Jackson, TN 38305

Terry L. Charlton
WHITEVILLE CORRECTIONAL FACILITY
102704
P.O. Box 679
Whiteville, TN 38075

Honorable James Todd
US DISTRICT COURT